All right, Mr. Snook, whenever you're ready. Thank you. May it please the Court, the entire problem in this case is that the investigation and the prosecution were basically conducted under the statute that the government wishes it had, not the statute that it actually does have. If the United States had adopted the same statute, for example, as the United Kingdom had, where you've got a statute that says anything that's a cathinone, whatever you attach to a cathinone, that's illegal. We would have pled guilty a long time ago. I probably wouldn't even be here because Mr. McFadden had made some efforts to try to determine what the law was, but that's not where we are. So instead we have this notion of substantially similar structures, substantially similar or greater than physiological effect. And all of the constitutional and evidentiary and instruction errors that we have alleged really flow from this basic disconnect between what the statute actually is and the way that the government was prosecuting the case. In this case, Mr. McFadden was not trying to break the law. He was really trying to follow the law. He was trying to do what we do in tax cases all the time, go determine where the edge is, go right up to the edge. I'm not going to deny that he was trying to do something that some folks later on might, as it now turns out. When you say he wasn't trying to break the law, what do you do with the testimony, I guess, Lois McDaniel turns, states evidence. Right. And she testified to some conversations, I think, that the two of them had where he was indicating that what he was selling as bath salts had the same effect as cocaine or meth or whatever. And that was a part of his sales pitch to Ms. McDaniel. In light of that, can you say he wasn't attempting to break the law? Well, my point, Judge, was that first of all, of course, the initial problem was he tried to find out what the law was and couldn't. Basically what happened was, to paraphrase from Granite, he tried to determine what the law was. He guessed wrong. And so he guessed wrong as far as what it means. Any time you've got two different experts, in fact, I'm sure you could get a whole room full of experts to get together and say we disagree fundamentally on what substantially similar means. The fact that something may, in fact, have a similar effect to methamphetamine or to cocaine or anything else may make it in a puritanical sense something we don't like. But unless it's barred by statute, for example, if there was something that had that effect that had no similarity, no structural similarity at all, there's no question it would be legal. It might be wrong in a moral sense, but it's not illegal. And that's where he was going with this. One of the interesting things to me is you paint an overall picture of what your argument is, but I had concerns that when I was reading your brief that you were trying to elevate routine, ordinary jury questions into these gigantic questions of law. Now, substantially similar, so you have a battle of experts and a jury gets to decide, and juries do that all the time. And then you had these vagueness challenges, which seemed to me to be a lot of times vagueness challenges are nothing more than an attempt to dress up an ordinary jury question over mens re. This thing requires that he have a mens re that this be intended for human consumption. And if he willfully intended that this be for human consumption, then that's just a plain old jury question. It's not some huge constitutional vagueness question. It's whether the jury found that the government proved beyond a reasonable doubt that the mens re was present. Well, Judge, I think it may have been in Klecker or a couple of other places I've seen it elsewhere as well that it is said that the only intent that is necessary is the intent that it be for human consumption, which I would submit to the court is not correct. And I think that the intent, in order to be compliant with Staples and all of the other cases... But we have a precedent, Klecker saying essentially that the relevant intent is whether it's intended for human consumption. Aren't you asking us to overrule a Klecker decision? To the extent if the court perceives it to be directly contrary, yes, I am, admittedly. And I appreciate your candor, but I do think you are asking us to overturn this prior case. But let me be clear about my ground of distinction. First of all, Klecker was an odd situation where you only had two judges voting. That's one odd situation about it. I don't know the history about that. I expect you do, but I don't. Actually, I don't. In any event, only two judges on the case. I think that the issue, the line about the only intent necessary, it was really sort of a throwaway, almost. I know it ends up being deemed to be the holding, in a sense, but if you look at sort of the overall structure of the argument, it doesn't require that that be the holding of the case. And I think that it actually is contrary to Staples. Is it of interest for a subsequent panel to sort of wish away a precedent it doesn't like by terming it a throwaway? Well, in fact, of course, one of the court's options is to say, in its opinion, we feel we're bound by Klecker, even though we don't necessarily agree with it, and that's an invitation to an en banc hearing, and we get someplace there. I've got to raise the issue as best I can. Who do we think is correct? Well, then I'm in deep trouble, at least on that point. But I think that under Staples, I think that it's clear that the government has the burden of proving that the defendant knew all of the relevant facts, and one of those relevant facts in this case would be the question of whether a structural similarity... ..whether a structural similarity. With the Seventh Circuit, I mean, Turcotte found that they have to make a specific finding, that the jury has to specifically find that he was aware of the structural similarities. Then the Seventh Circuit went on to say, we understand that may be a very heavy burden for the government to meet. It's a very rare person who is going to know, with sufficient attention to the chemical niceties, whether this chemical or that chemical is substantially similar. Perhaps the best example of just how difficult that can be, I brought along a couple of the models that we used at trial, Judge, and this is MDPV, which is one of the controlled sentences analogs, and this is methcathinone, which is what it's supposedly similar to. You can see that they're very different in size, they're very different in molecular weight, as we discussed in our brief, yet the government expert says that's substantially similar. That's a good argument, but I come back to the point I raised earlier. Why isn't that a jury argument? I mean, I felt like when you held those two things up to me that I was suddenly transformed into a juror. And, you know, there's nothing wrong with that, but the whole purpose of this statute, it seems to me that the defendants repeatedly want lists of every drug that is prescribed, but that's an extremely difficult thing to do, given the fact that we have very inventive chemists in their garage laboratories or wherever they're putting this stuff together, and the potential variations of prohibited substances are legion. And I just don't think you could possibly put down a definitive list of every controlled substance as analog. But if, in fact, Congress had chosen a better way to write the statute, i.e. the way that the UK has written the statute, then the list would be unnecessary. So what are we to say, you know, that, Congress, we don't like the job you've done, we really wish you'd more like the British Parliament? No, but to the extent that you get into this argument of, you have to be this vague in order to accomplish some greater purpose, you don't have to be this vague to accomplish the same purpose. Congress has chosen to be this vague or has lapsed into being this vague, but they don't have to be this vague in order to prohibit dangerous, arguably dangerous substances. And so my argument is directed more to the question of responding to this notion that it is inevitable, that it is required, that it's the only way to accomplish this objective, because it is not. And the other point that I would make, Your Honor, is that I think that if we are to the point of looking on them as all just jury questions, and you've sort of characterized a lot of my arguments on constitutional grounds as being, in essence, gussied-up jury arguments, then part of the problem is that I think that the jury needs to be more adequately instructed. The jury, for example, would need to be instructed, as I ask the Court to instruct in this particular case, to be instructed on what the elements of the offense were and what degree of knowledge is required, understanding that Klecker runs against my argument to a certain extent. The jury was instructed according to our Klecker precedent. That's correct. And I would argue, as I suggest, both as a constitutional matter and as an instructional matter. As the Court, I'm sure, figured out, we raised the same basic issues in about three or four different contexts, first pre-trial and then during the trial and then in the instruction phase and then post-trial argument, wanting to make sure that whatever procedural context the Court happened to be perceiving the issue to be most appropriate for, we had addressed it. So we had asked that there be jury instructions along the lines that I would argue were required by the U.S. Supreme Court decision in Staples. Those instructions were not given. One of the other problems that we keep running into in this case is the question of what do you do with a mixture? Under the statute, a mixture can't possibly be a controlled substance analog to any other controlled substance because a controlled substance, as specified on the list of controlled substances, are all pure molecules. They are not mixtures. Isn't it possible that the jury listened to all of this and the gist of your argument was, well, it was so vague, I really didn't know what I was doing. I had no idea this was unlawful. It's all so vague. And isn't it possible that the jury said, you knew exactly what you were up to. The conversations that Mr. McFadden had with Ms. McDaniel reveal someone who was making a very calculated attempt to skirt the law. And the McDaniel conversation kind of knocks in the stomach your whole argument that, you know, I'm an innocent citizen. I just didn't have any idea what I was up to. I've been blindsided. And that just doesn't accord with the evidence here. Your Honor, what the evidence shows is that he was aware that there was a controlled substance list. He was not aware there was a controlled substance analog statute out there. He was aware of the controlled substance list, and he was trying to make sure that he didn't do anything that contravened that law. But the jury didn't buy that. Well, I don't think under the jury instructions that would have been a defense. That wouldn't have been a defense as I regard the instructions that the court gave. If the court has any other questions, I'll reserve the balance of my time. Thank you. Ms. Hudson. Good morning. Your Honor, the statute as applied to Mr. McFadden was not unconstitutionally vague. It provided adequate notice as well curtailed arbitrary enforcement. This court decision in Klecker effectively decides certainly the arbitrary enforcement prong of this inquiry. In the Klecker decision, this court held that the intent requirement alone tended to defeat any vagueness challenges based on the potential for arbitrary enforcement. The Carlson and Hodder cases cited in the Klecker decision point out that this is so because the intent for human consumption element of the statute permits legal uses of certain of these drugs. Other cases cited by the Klecker court make clear that this two-step inquiry that is required under the statute sufficiently restrains and constrains law enforcement and provides guidance to law enforcement as well as preventing arbitrary enforcement. And picking up on the conversation that this court was having with my opponent and referencing also the Klecker decision, at the end of that decision, the court noted that some courts had held that in the context of the vagueness challenge, a defendant who had actual notice could never prevail on a vagueness challenge. And as this court has pointed out, the evidence in this case clearly established that Mr. McFadden did know what he was doing. And his concealment activity in this case, we believe, would establish a sufficient basis for finding that there was actual notice despite his claims that he wasn't aware of the statute. And that from that basis, he would also be denied his constitutional claim in this case. But that comes down to a question of his credibility, doesn't it? I mean, it doesn't establish it as a matter of law. The jury had the evidence concerning his questions and things that were going on in terms of his interest in purveying the substances. What was it, to Ms. McDaniel? But isn't what we're talking about here not an issue as a matter of law but simply an issue in front of the jury as to credibility, whether they believed him? And the evidence wasn't overwhelming, but there certainly was evidence. Isn't that really what your argument is? That's certainly part of the argument. And I don't think the court has to base its constitutional decision on that piece of it, just as in Klecker the court didn't. But I think there is a legal argument to be based on the same evidence, that there was sufficient evidence in this case to establish actual notice, thereby precluding Mr. McFadden from his constitutional claim. But I don't think the court has to decide the issue on that basis. I guess what I'm wondering about is if you asked us to take that route of actual notice, what would be the burden, I mean what would be the evidentiary requirement in order to find that that took place? Wouldn't it have to be, as a matter of law, the facts of the case established actual notice? And you don't really have that here, do you? You have a lot of suspicious behavior, but you don't have actual notice, do you? I think we get very close to it. I think we get very close to it with his concealment activity. If you look at the conversations, I know they're not only between Mr. McFadden and Ms. McDaniel, but the conversations in some of the emails with his suppliers for this drug, where he's asking for replacement and evidence like that, as well as on the back end the website and the communications where he's saying, if you look at my Green Valley Oils website, it's a front for the hardball, and I'm trying to put some shade in, and I think all of that concealment activity supports an inference of actual notice. But again, I think our strongest argument is simply that the Klecker decision makes the result of that argument very clear. Regarding the instructions in this case, and again, we are relying on Klecker. Our view is that the district court instructions were consistent with Klecker, and for that reason, there's no reason to find that the jury was improperly instructed at all. I wanted to make one point in response to my opponent's argument with the chemical structures. Just for the court's consideration, I found it interesting that in looking at this chemical similarity question in the district court decision underlying the Fourth Circuit's Klecker decision, that court considered the same argument regarding the evidence on chemical structure and chemical similarity, and I think that court made a distinction that could be helpful here, which is that there's a difference between the chemical structure and the properties of these chemicals, so that testimony about the weight and size of these substances is a very different thing from the literal structure. I understand my opponent is making the argument that the structures are different as well, but again, it was a jury question, and I think on that basis as well. We have these vagueness challenges periodically, but aren't they really just dressed-up mens re challenges, and doesn't it come down to a jury question as to whether somebody, because you don't want somebody to be blindsided by the law if they didn't willfully, but it comes down to whether the jury accepts the government's evidence or rejects the government's evidence as to whether somebody willfully did a certain thing, and a lot of times these mens re questions appear as vagueness challenges, but it transforms them because essentially they're just jury questions over mens re, aren't they? I think so, Your Honor, and in this case, the jury had before it, as the district court found, a basis upon which to find that these structures were chemically similar, and of course the physiological similarity question, and this court as well, and Klecker as well as other courts addressing the vagueness challenges, have found that the chemical structure alone, looking at the chemical structure, could inform a reasonable person of their similarity, so I do think it's ultimately a jury question. I also would add that at least a large part of the argument that Mr. McFadden makes in the context of his vagueness challenge in a way is not attacking the vagueness of this statute. Rather, it's attacking 841 for not tacking on the Analog Act. He says he couldn't find the statute at all. He's not really saying that he didn't understand it as it was written. He's saying he never found it, and really attacks 841 in his brief for sort of not putting a red flashing light at the end of it somewhere to suggest to him that there was an Analog Act. So I find part of his argument really not to be a vagueness challenge for that reason as well. So was there any further questions? Anything else? No, I think we understand your argument. No. Just a couple of brief comments in response to Ms. Hudson's argument. First of all, all of the issues, all of the times where there seems to be some suggestion that Mr. McFadden had some notice that there was a problem come up only as to the FORMAC. They only come up in October, November, on into February. So when he's charged with having sold things before any of these so-called notice opportunities, there's no indication at that point. He knew that MDPV, he knew that methadone had been declared to be illegal, and that's when he stopped selling them. So if there is a contention that he was on notice that he had crossed a line someplace, all of that evidence comes at the time when he was only selling FORMAC. Now, what does that matter? It matters, in fact, because if you were to strip out everything else and remand for sentencing on FORMAC, he comes out with a lower sentencing range. So it's not an irrelevant consideration. That's point number one. Point number two that I wanted to make is that we've got this discussion, and Ms. Hudson touched on briefly this issue of structure, and of course we've got our little models here and so on. Part of the issue that gets to be a problem between the government's version of things and our version of things is the government's version of things says 2D drawings are just fine and 3D models give too much information. They confuse juries. Now, what that is in essence saying is juries can't have the whole truth. They can only have our version of the truth, and if they don't like the defense version, it might confuse them. It might lead them to find somebody not guilty. Is any testimony that there's a legitimate use for the drugs in the form that he was selling it? No. Legitimate in the sense of medical? No. Is there evidence that these drugs were created by accident? No. There's no doubt that he is trying to make a drug that is substantially similar to what is illegal? No. First of all, he didn't make any of the substances, and that's part of the confusion here. This statute actually does okay when applied to the original manufacturers, but when it gets into the stream of commerce where everything gets mixed, and so this chemical gets mixed with caffeine, which certainly all of us expect every morning when we get our cup of coffee, there's a certain lift-me-up aspect of things. We don't know how much caffeine that wasn't in there. Lidocaine is in there. A bunch of other chemicals are in there. Vitamins are in there. We don't know exactly what's going on. I don't dispute the fact that he was trying to produce something that would feel that would have a recreational impact for somebody, but not everything that has a recreational impact is illegal, and there are plenty of substances that are legal, starting with alcohol. That's still regulated, but there are other substances. He's not being prosecuted for producing some kind of caffeinated coffee or soft drink or running a distillery or whatever. These chemical molecules are a far cry from an alcoholic beverage or a cup of coffee, aren't they? Matter of degree? To analogize this to a glass of wine or a cup of coffee, that's going pretty far afield, isn't it? Your Honor, I think the point is that in terms of when I'm being asked, isn't it clear that he's doing something shady? I will concede he is doing something that is intended to make somebody feel good, but there are lots of things out there that are intended to make somebody feel good, and Mr. McFadden, as he testified at sentencing, it wasn't an issue for the jury, but he testified at sentencing. But his sales pitch to Lois McDaniel was this is like meth, this is like crack. Well, it's probably more accurate to say that her question to him being prompted was, which one of these is more like crystal meth? And, of course, you don't have the benefit of listening to the tape, but he said, and then he answers one way or the other. I don't remember which one it was. Did he at some point during the conversation say, we have to be careful how we talk about this kind of stuff? That's in November, yes. You know, Mr. Snook, it seems to me that at the heart of your argument, you're saying that a defendant can engage in borderline conduct, and as long as it's truly borderline, it's not a problem. There's no criminality. But isn't that true throughout the law, whether you're talking about fraud or all sorts of different crimes, if you're engaging in borderline conduct and the law provides definitions of what the offense is, then you're at your own risk if you're on the wrong side of the border. I mean, isn't that true throughout our criminal law, not just here? That's certainly true. I would point out a couple things. First of all, many of the instances where there is a vague standard, and I would go back to the argument or the point made in my brief about the distinction between rules-based statutes and standards-based statutes, when you've got a standards-based statute like that, most of the standards-based statutes, it turns out, if you violate them, it's a regulatory offense. It's not a criminal offense. There are very few statutes that the U.S. has that are standards-based criminal offenses. But in cases like tax fraud, things like that, there are instances there where ignorance of the law actually is a defense, and that's the kind of thing we see, whether it's taxes. Firearms is another example where you can say, well, gee, anybody handling firearms ought to know that they're in kind of risky territory, but, in fact, the U.S. Supreme Court has said, in Staples in particular, you've got to know. The government's got to prove that you actually knew the characteristics of this weapon. So, yes, everything that we do, at some point we're skating up to a line, but at some point we've got to be able to say there's a line, we know where the line is. If we don't know where the line is, number one, that's a problem for the line drawer, that's a problem for the law. But, number two, if I get kind of close to the line and it turns out I've accidentally stepped over, I would suggest to the court that's not an appropriate time for a criminal sanction. And then that comes right up against Klecker again, doesn't it? Admittedly. Okay. And, again, I would argue that Klecker is inconsistent with Staples. Mm-hmm. So, I'm out of time. Okay. Thank you, Mr. Snook. Thank you. We'll come down and greet counsel and then go into our next case.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Barbara Milano Keenan